**GIRARD SHARP LLP**
Dena C. Sharp, SBN 245869
Samhita Collur, SBN 348448
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
dsharp@girardsharp.com
scollur@girardsharp.com

[Additional Counsel Appear on Signature Page]

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SAYALI VILEKAR, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SCHELL & KAMPETER, INC., d/b/a Diamond Pet Foods and/or Taste of the Wild,<br><br>Defendant. | Case Number: 3:26-cv-03723-RFL<br><br>**STIPULATION AND ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |

WHEREAS, the named Plaintiff and Defendant Schell & Kampeter, Inc. have met and conferred on protocols for the format of the Parties' production of hard copy documents and electronically stored information (as defined in Federal Rule of Civil Procedure 34(a)(1)(A), "ESI") and on a plan to be followed to aid the Parties in identifying and/or culling potentially responsive documents and ESI; and

WHEREAS, the Parties have agreed that the following shall apply to all discovery of ESI and hard copy documents by the Parties in this case, unless the Parties agree in advance and in writing or if the Order is modified by the Court.

WHEREAS, Defendant previously produced documents and ESI in *Harmon, et al. v. Schell & Kampeter, Inc.*, Case No. 2016-CV17833 (Cir. Ct. Jackson Cnty., Mo.), subject to a Confidentiality and Protective Order entered in that action on September 20, 2021, and the Parties have agreed in principle that, to avoid duplicative discovery, those documents (other than documents relating solely to previously dismissed heavy-metal and probiotic claims not at issue in this action) will be deemed produced in this action on the terms set forth in this Order and in the Stipulated Protective Order; and

WHEREAS, except as specifically set forth herein, this Order does not: (a) alter or affect the applicability of the Federal Rules of Civil Procedure ("Federal Rules") or any Local Rules of the U.S. District Court ("Local Rules"), as applicable; (b) address, limit, determine, or affect the relevance, discoverability, or admissibility as evidence of any document or ESI, regardless of whether the document or ESI is to be preserved, is preserved, or is produced; (c) alter or affect the objections to discovery available under the Federal Rules of Civil Procedure; or (d) require the production of documents or ESI that is protected from disclosure by the attorney-client privilege, work product doctrine, or any other privilege, immunity, or protection from disclosure.

NOW THEREFORE, it is hereby STIPULATED and ORDERED:

## I. GENERAL GUIDELINES

1. **Two Categories of Documents.** Defendant previously collected, reviewed, and produced a substantial volume of documents and limited ESI in the Harmon Litigation (as defined in the Stipulated Protective Order), and the Parties intend that the deemed production of those materials in this action will satisfy Defendant's production obligations as they pertain to Plaintiff's First Request for Production served in this action. This Order accordingly addresses two categories of documents: (a) Harmon Documents produced or deemed produced to satisfy Plaintiff's First Request for Production; and (b) all other document productions, meaning documents and ESI not produced or deemed produced for purposes of satisfying Defendant's discovery obligations in response to Plaintiff's First Request for Production.

2. **General.** The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter, consistent with this Court's Guidelines for the Discovery of Electronically Stored Information. The Parties agree to take the proportionality considerations addressed in the Federal Rules of Civil Procedure into account for purposes of preservation and production of ESI and hard copy documents in this Lawsuit.

3. **Variations.** If any Party identifies a circumstance where application of this Order is not reasonably achievable for technological or other reasons, the Parties will meet and confer in an effort to reach agreement on an appropriate deviation from this Order. In the event the Parties cannot reach agreement, the matter may be submitted to the Court for determination. This Order may also be modified by stipulation of the Parties, or by the Court for good cause shown.

4. **Preservation.** Pursuant to Federal Rule of Civil Procedure 26, the Parties shall take reasonable and proportional steps to preserve reasonably accessible documents that are proportional and relevant to the claims and defenses in the Litigation. The parties will exchange a list of the types of ESI they believe should be preserved and the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved, *e.g.*, "HR head," "scientist," and "marketing manager." The parties shall add or remove custodians only with agreement or an order of the Court as reasonably necessary. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the Parties further agree that:

a. Certain data sources may not be reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B). The Parties will identify any such sources in the meet and confer under Section IV. ESI from any sources identified will not be searched, reviewed, or produced absent agreement of the Parties or order of the Court.

b. The Parties will also identify in that meet and confer any categories of ESI that need not be preserved. Nothing in this Section relieves any Party of its preservation obligations under Federal Rule of Civil Procedure 37(e) or applicable law.

5. **Liaison Representatives.** Lead counsel will have primary responsibility for substantive negotiations about discovery matters. In addition, each Party will identify an e-

discovery liaison representative that is and will be knowledgeable about, and responsible for, discussing their respective ESI. Each liaison representative will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this action. The Parties will rely on the liaison representatives, as needed, to confer about ESI and to help resolve disputes without Court intervention.

## II. DOCUMENTS PREVIOUSLY PRODUCED IN THE HARMON LITIGATION

6. **Definitions.** The terms "Harmon Litigation," "Harmon Protective Order," "Deemed Production Agreement," and "Harmon Documents" have the meanings given in the Stipulated Protective Order in this action. Consistent with the Stipulated Protective Order, this Order and the Stipulated Protective Order govern the production, handling, designation, and use of Harmon Documents in this action. The Parties shall use reasonable efforts to execute the Deemed Production Agreement within 30 days after entry of this Order.

7. **Documents Responsive to Plaintiff's First Request for Production of Documents.** Plaintiff in this action served a request for production of documents seeking documents Defendant produced in the Harmon Litigation except for documents exclusively related to previously dismissed heavy-metal and probiotic claims. The parties are actively meeting and conferring, and have worked out a potential process whereby, instead of literal reproduction of those documents, Defendant will agree they can be deemed produced in this action. Should such a deemed-produced agreement be reached or ordered by the Court, the parties agree that the format of production as outlined in this ESI Protocol will not apply for the limited purpose of effectuating that deemed-produced agreement except as otherwise stated.

8. **Subsequent Requests for Production in this Action and Their Relation to Harmon Documents**. The deemed-produced agreement does not modify or otherwise alter Defendant's obligations to search, review, collect, and preserve documents or information in this action regardless of whether there is any overlap in requested documents and information with the Harmon Documents. Defendant does not waive its rights to object to any subsequent request for

production. To the extent Defendant's search, collection, and review identifies documents that were included in the parties' deemed-produced agreement, Defendant need not re-produce those previously-deemed produced documents but must identify those documents in response to any request for production. To the extent a Harmon Document was previously produced but is part of a family that was not produced in its entirety in the Harmon Litigation, and that family member is responsive to a subsequent request for production, Defendant will produce the entire family regardless of that overlap unless withheld on grounds of privilege or another applicable protection.

9. **Requests for Reproduction of Harmon Documents.** Where Plaintiff has a good faith basis to request that a Harmon Document be reproduced in accordance with the terms of this ESI Protocol (for example, where the prior production rendered the document illegible), Plaintiff may request reproduction by identifying the document by Bates number and stating the reason the reproduction is necessary. Defendant will evaluate each such request on a document-by-document basis and will reproduce the document in a different format only where a legible or native version exists in Defendant's possession, custody, or control and is reasonably accessible. To the extent a native or legible version does not exist, Defendant will so state and explain. Requests shall be made in reasonable batches. Within 30 days of such request, Defendant must (1) determine whether the identified documents exist in a different format and assess the burden of reproduction, (2) if the documents cannot be produced in accordance with this ESI Protocol, explain in writing to Plaintiffs why as well as what options are available for reproduction, and (3) make known whether it will in fact reproduce the documents. Disputes concerning reproduction requests are subject to the meet and confer and dispute resolution procedures of this Order and the Court's discovery dispute resolution procedures. Defendant's reproduction of any document under this paragraph shall not be construed as a concession that any other document can or should be reproduced, nor that it is relevant or admissible.

## III. FORMAT OF PRODUCTIONS

With certain exceptions for Harmon Documents identified in Section II, the parties agree to produce documents in the following production formats:

10. Electronically Stored Information (ESI) will be produced as follows:

a. **Natives.** Non-privileged audio/video files, spreadsheets, CAD drawings, and any file that cannot be rendered to tagged image format (.TIFF) will be produced in native. Each native file will be named after its bates number and shall have an accompanying bates-stamped single placeholder TIFF saying "File Provided in Native Format" that also indicates the confidentiality treatment of the record.

b. **Images.** All documents (except those designated to be produced in native above) will be produced as single-page, black and white Group IV, 300 DPI 1-bit .TIFF images; or single page .JPEGs for color images along with an .OPT image cross-reference file.

c. **Text.** Document-level extracted text files or Optical Character Recognition ("OCR") text files (for redacted records) shall be provided for each record produced. Extracted text shall include all non-privileged content including all comments, tracked changes, hidden content, and/or speaker's notes within each file. OCR text files should contain any un-redacted portions of the documents.

d. **Data.** A standard (Concordance) delimited .DAT file with UTF-8 encoding containing paths for the native files and document-level text files, and the fields listed in Exhibit A shall be provided.

e. **Format for Production of Message-Based Applications.** Whether messages from message-based applications (e.g., Microsoft Teams) are within the scope of collection for a particular custodian, and the appropriate unit of production and surrounding context for any responsive message, shall be addressed in the meet and confer regarding custodians and data sources under Section IV.

f. If a party determines that messages from message-based applications are responsive, the entire 24-hour period for the day in which the responsive message was sent will be produced along with any relevant metadata. If there are attachments, those should be produced along with the message following the parent-child relationship described in Parent-Child

Relationship (Paragraph 18). The producing Party is not required to search for or produce information contained within links that are included in the messages. However, if the receiving Party feels that a link to non-public sources may contain responsive information, the Parties shall meet and confer in good faith.

g. **Hyperlinks.** Where facilitated by the email system provider on an automated basis at scale, the Parties shall use available technology to collect, search and produce non-public documents hyperlinked to responsive documents, including those utilizing Google Workspace, Microsoft Office's "Share Documents Via Link" feature, or other document sharing platforms, with the email or attachment to which the documents were hyperlinked in responsive documents. Hyperlinked documents in emails shall, as feasible via automated means at scale, be collected, processed and searched in the same manner as attachments for the purposes of preserving the association for production. Where it is not technically feasible to collect hyperlinked documents automatically at scale, or the association between transmittal and hyperlinked document cannot be preserved or readily determined, the Producing Party shall consider reasonable requests for production of hyperlinked documents on a case-by-case basis. A reasonable request for hyperlinks should include a list of hyperlinks and corresponding Bates numbers. The parties agree to meet and confer in good faith to resolve any disputes concerning the appropriateness of production of the requested documents. A Producing Party is not required to acquire new technology or undertake manual review of documents to identify, collect, or process hyperlinked documents.

11. **Hard-Copy Documents.** Hard Copy documents should be scanned and produced as single-page, black and white Group IV, 300 DPI 1-bit .TIFF images along with OCR text, an .OPT image cross-reference file, and a .dat load file as noted above. The .dat file should contain all available fields in the .dat load files for each scanned document to the extent captured at the time of collection. The Parties will make reasonable best efforts to ensure that hard copy documents are logically unitized when scanned. Distinct documents should not be merged into a single record, and single documents should not be split into multiple records (*i.e.,* paper documents

should be logically unitized[1]). In the case of an organized compilation of separate documents (for example, a binder containing several separate documents behind numbered tabs), the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields. The Parties agree not to degrade the searchability of hard copy documents as part of the document scanning or production process. Color originals must be scanned and produced in color.

12. **Redactions.** Any redactions shall be clearly indicated on the face of the document and shall be indicated in the REDACTED field in the .dat load file. If documents that the Parties have agreed to produce in native format need to be redacted, they will either be produced in redacted TIFF format or in redacted native format using a native redaction tool created for the purpose should the Parties have access to same, at the discretion of the producing Party. A Producing Party may redact from an otherwise responsive document or ESI item material protected by the attorney-client privilege, work-product doctrine, or other applicable privilege or protection, and personal information protected from disclosure by law. No other redactions may be made within a produced document or ESI item absent agreement of the Parties or order of the Court.

13. **Databases, Structured, Aggregated or Application Data.** To the extent that databases, structured, aggregated or application data contain proportional, responsive information, the Parties shall meet and confer to determine a reasonable and proportional method for producing responsive information from these sources.

14. **De-NISTing.** Electronic files will be De-NISTed, removing commercially available operating system and application file information contained on the current NIST file list.

15. **Deduplication.** Deduplication of ESI is expected. A producing Party shall de-duplicate ESI horizontally (globally) across the population of records (based on MD5 or SHA-1

[1] Logical Unitization is the process of human review of each individual page in an image collection using logical cues to determine pages that belong together as documents. Such cues can be consecutive page numbering, report titles, similar headers and footers, and other logical indicators.

hash values at the parent document level). Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates. The ALL CUSTODIAN metadata field shall be updated to indicate all custodians for any document that has been deduped.

16. **Email Threading.** The Parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members (including all attachments within the thread) and may exclude lesser inclusive copies. The receiving Party reserves the right to request the production of all lesser inclusive emails within an email thread where appropriate.

17. **Embedded Files.** Substantive embedded object and/or files (*e.g.,* Word documents, audio and video files, etc.), shall be extracted, searched and produced consistent with other ESI as family groups, to the extent feasible using the technology reasonably available to the Producing Party. Reasonable requests for embedded Excel spreadsheet files, to the extent they exist, will be considered on a case by case basis. Embedded files should be assigned Bates numbers that directly follow the Bates numbers on the documents within which they are embedded. Non-substantive images and logos embedded in emails (*e.g.,* MS Office embedded images, email in-line images, logos, etc.) shall not be extracted during processing of files.

18. **Parent-Child Relationships.** For email families, the parent-child relationships (the association between emails and attachments) should be preserved and email attachments should be consecutively produced with the parent email record. Each document shall be produced with the production number for the first and last page of that document in the "BegBates" and "EndBates" fields of the data load file and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the document family.

19. **Time Zone.** To the extent reasonably practicable, ESI items shall be processed using CT as the time zone by all Parties.

20. **Bates Numbering.** Bates numbering shall be consistent across the production, contain no special characters, and be numerically sequential within a given document. If a Bates

number or set of Bates numbers is skipped, the skipped number or set of numbers should be noted with a placeholder page. Attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached. In addition, wherever possible, each *.tiff image will have its assigned Bates number electronically "burned" onto the image.

21. **Encryption.** To maximize the security of information in transit, any media or file sharing electronic document repository on which documents are produced must be encrypted. Production deliverables provided via File Transfer Protocol ("FTP") shall be made available on a secured FTP connection. In such cases, the Parties shall transmit the encryption key or password to a requesting Party, under separate cover, contemporaneously with sending the encrypted media, or correspondence indicating the availability of the encrypted FTP deliverables.

## IV. IDENTIFICATION AND COLLECTION OF DOCUMENTS AND ESI

22. **Meet and Confer.** The Parties will meet and confer in order to, where possible, reach an agreement on search methodologies with the goal of limiting the scope of review for production, minimizing the need for motion practice, and facilitating production in accordance with the deadlines set by the Court or agreed upon by the Parties. The Parties agree and understand that their respective responses are based on their knowledge and understanding as of the date of the response and that further inquiry may reveal additional information pertinent to the efficient, effective collection of potentially relevant materials. Nothing in this Order shall require a Party to use certain search, culling or prioritization methodologies and nothing shall preclude a producing Party from performing a responsiveness or privilege review to determine if documents captured by search terms are in fact responsive to the requesting Party's requests.

a. **Custodians and Storage Locations.** The Parties shall meet and confer and attempt to reach agreement on the producing Party's custodial and non-custodial sources of information from which information will be collected for purposes of discovery.

b. **Search Terms.** If a producing Party intends to use search terms in connection with the collection and/or production of documents and ESI, including culling

documents prior to reviewing the documents for relevance, the producing Party shall first confer in good faith with the requesting Party to determine the mutually agreeable search terms before the initial production of documents and ESI subject to such search terms. As part of the meet and confer process, the Parties shall exchange proposed lists of search terms with an explanation of how such terms will be applied, a list of proposed custodians, and the time period or temporal scope of documents that will be searched. The exchange of search terms will include the proposal of internal terminology or project names, where applicable. The producing Party shall provide a hit report for each search term, including document hits, documents hits plus families and unique hits. The producing Party may identify each search term or query returning overbroad results and propose a counter proposal correcting the overbroad search or query. Nothing in this Order relieves a Party of its obligation to produce responsive, non-privileged documents of which its counsel becomes actually aware of in the course of the Litigation and to conduct a reasonable targeted search for such documents; the Parties will meet and confer regarding any additional searches beyond the methodology agreed under this Order.

c. **TAR/Generative AI.** As part of discovery, the producing Parties agree that they may use advanced analytics (*i.e.*, technology-assisted-review, Active Learning, Generative AI, etc.)—separately or in addition to search terms—to help to identify responsive documents for production. If the producing Party intends to use TAR/Active Learning/Generative AI to identify responsive documents for production, the Parties will meet and confer in good faith to agree upon TAR/Active Learning/Generative AI parameters to govern the process. Nothing in this Order relieves a Party of its obligation to produce responsive, non-privileged documents of which its counsel becomes actually aware of in the course of the Litigation and to conduct a reasonable targeted search for such documents; the Parties will meet and confer regarding any additional searches beyond the methodology agreed under this Order.

d. **Unsearchable Documents.** Documents which are reasonably believed to be responsive and for which text-based search technologies are fundamentally ineffective, such as images, audio/video files or hard copy documents, will be addressed and a methodology

agreed upon in the meet and confer under this Section regarding reasonable and proportional methods to identify and review such documents, which may include culling by criteria that do not rely primarily on text (e.g., file type, date, custodian, source, folder path, and file size).

23. **Date Range.** The Parties shall meet and confer regarding the appropriate date range for document productions and searches.

24. **Rolling Productions.** Documents will be produced on a rolling basis pursuant to a schedule agreed upon by the Parties and consistent with the Case Management Order. The Parties reserve the right to supplement production as necessary.

## V. PROCESSING OF NON-PARTY DOCUMENTS

25. A party that issues a non-Party subpoena ("Issuing Party") must include a copy of this Order with the subpoena and request that the non-Party produce documents in accordance with the specifications set forth herein.

26. The Issuing Party is responsible for producing to all other Parties all subpoenas served on any non-Party and any document(s) obtained pursuant to a subpoena to any non-Party in the form in which the document(s) was/were produced by the non-Party. Productions by a non-Party should be produced by the Issuing Party to all other Parties within fourteen (14) calendar days of the non-Party's production to the Issuing Party.

27. For the avoidance of doubt, nothing in this Order is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or non-Parties to object to a subpoena.

## VI. PRIVILEGE LOGS

28. The Parties recognize that some documents may be redacted or withheld on the grounds of attorney-client privilege, work-product doctrine, common interest/ joint defense, or other recognized protections from disclosure (collectively, "privilege"). The Parties agree that documents within responsive families withheld due to privilege should be replaced with a slipsheet that says "Document Withheld for Privilege" such that the production remains family complete. A Producing Party may, at its election, produce a single Bates-numbered placeholder

for each document withheld in its entirety. For Documents withheld from production pursuant to a claim of attorney-client privilege, work product protection, or other applicable privilege or immunity, the designating party shall produce one or more privilege logs in Excel or a similar electronic form that allows text searching and organization of data. The designating party shall produce a privilege log within 45 days following each production volume from which privileged Documents are withheld. The final privilege log shall be produced no later than 45 days before the close of discovery.

a. Privilege logs will include the privilege claimed, a description of the document that is reasonably sufficient to enable other parties to assess the privilege claim and designated objective metadata fields to the extent they contain information and the information is not privileged or protected. Designated objective metadata fields are: Author, From, To, CC, BCC, Date, Email Subject, File Name, and File Extension. Legal personnel shall be identified as such by adding an asterisk before or after their names in the privilege log.

b. When there is a document comprised of a chain of privileged emails among the same participants and discussing the same subject matter, the producing party need include only one entry on the privilege log. If, however, the participants or subject matter change in the course of the chain, a new entry shall be required on the privilege log. In addition, if another document contains a chain of privileged emails which overlap with the aforementioned chain of emails, the producing party shall create a separate entry on the privilege log for each document comprising a chain of emails.

c. Privilege logs need not include (i) communications between a Party and its outside counsel concerning this Litigation transmitted on or after April 29, 2026; (ii) communications between a Party and its outside counsel concerning litigation strategy, discovery requests and responses, or filings in the Harmon Litigation; (iii) documents created by or at the direction of outside counsel in anticipation of this litigation after the filing of the plaintiff's original complaint; or (iv) redactions from produced Documents, provided the reason for the

redaction appears on the redaction label and the unredacted portion of the document contains content that allows other parties to assess the claim of privilege.

d. Procedures for challenges to privilege designations, along with non-waiver and other provisions related to such privileges and protections, are outlined in the Stipulated Protective Order. Challenges to privilege designations shall be resolved by applying federal common law.

e. Harmon Privilege Log: Defendant may satisfy its privilege log obligations with respect to documents withheld or redacted from its Harmon Litigation production by producing the privilege log served in the Harmon Litigation, as updated in October 2025, and as Defendant may elect to further supplement it, within 45 days after the effective date of any Deemed Produced Agreement. Challenges to entries on that log shall be resolved by applying federal common law. Defendant is not required to re-review the documents withheld or redacted in the Harmon Litigation.

f. If any disputes arise concerning any privilege log, the Parties shall meet and confer to try to reach a mutually agreeable solution. If they cannot agree, the matter may be brought to the Court in accordance with the Court's procedure for discovery disputes.

## VII. NON-WAIVER; PRIVILEGE; PROTECTIVE ORDER

29. **Non-Waiver.** Nothing in this Order shall be interpreted to require disclosure of information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The Parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents or ESI.

30. **Protective Order.** All productions are subject to the Stipulated Protective Order entered by the Court in this Litigation. Nothing in this Order modifies the Stipulated Protective Order, and in the event of any conflict concerning the treatment of confidential or privileged material, the Stipulated Protective Order controls.

**VIII. GOOD FAITH.**

31. The Parties will act in good faith and use these procedures to identify and reduce the potential for disputes that may arise in connection with the search and/or review methodologies selected by any producing Party.

**IX. CONTINUING OBLIGATIONS.**

34. The Parties recognize that discovery shall be an iterative and cooperative process. The Parties will continue to meet and confer regarding any issues as necessary and appropriate. This Order does not address or resolve any objections to the scope of the Parties' respective discovery requests.

**X. DISPUTES.**

35. If any disputes arise, the Parties shall meet and confer in a good faith effort to reach a mutually agreeable solution. If they cannot agree, the matter may be brought to the Court in accordance with the Court's procedure for discovery disputes.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

DATED: September 25, 2026

Respectfully submitted,

*/s/ Dena C. Sharp*

**GIRARD SHARP LLP**
Dena C. Sharp, SBN 245869
Samhita Collur, SBN 348448
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
dsharp@girardsharp.com
scollur@girardsharp.com

**STUEVE SIEGEL HANSON LLP**
Patrick J. Stueve (*pro hac vice*)
Todd E. Hilton (*pro hac vice*)
Stephen D. Ahal (*pro hac vice*)
Joy D. Merklen (*pro hac vice*)
460 Nichols Road, Suite 200

Kansas City, Missouri 64112
Tel.: 816-714-7100
Fax: 816-714-7101
stueve@stuevesiegel.com
hilton@stuevesiegel.com
ahal@stuevesiegel.com

**SHANK & HEINEMANN, LLC**
Christopher S. Shank (*pro hac vice*)
David L. Heinemann (*pro hac vice*)
1968 Shawnee Mission Pkwy, Suite 100
Mission Woods, Kansas 66205
Tel.: 816.471.0909
Fax: 816.471.3888
chris@shanklawfirm.com
david@shanklawfirm.com

**SCHIRGER FEIERABEND LLC**
John J. Schirger (*pro hac vice*)
Joseph M. Feierabend (*pro hac vice*)
Katherine A. Feierabend (*pro hac vice*)
6811 Shawnee Mission Parkway, Suite 312
Overland Park, KS 66202
Tel.: (816) 561-6500
schirger@sflawyers.com
feierabend@sflawyers.com
kfeierabend@sflawyers.com

*Attorneys for Plaintiff*

*/s/ Naoki Kaneko*
**SHOOK, HARDY & BACON L.L.P.**
Naoki Kaneko, SBN 252285
nkaneko@shb.com
5 Park Plaza, Suite 1600
Irvine, CA 92614
Tel: 949.475.1500 | Fax: 949.475.0016

Amir Nassihi, SBN 235936
anassihi@shb.com
555 Mission Street, Suite 2300
San Francisco, CA 94105
Tel: 415.544.1900 | Fax: 415.391.0281

Kevin Underhill, SBN 208211
kunderhill@shb.com
555 Mission Street, Suite 2300
San Francisco, CA 94105
Tel: 415.544.1900 | Fax: 415.391.0281

*Attorneys for Defendant*
*SCHELL & KAMPETER, INC., d/b/a*
*DIAMOND PET FOODS*

**FILER'S ATTESTATION**

I, Dena C. Sharp, am the ECF User whose ID and password are being used to file this document. In compliance with Civil L.R. 5-1(i)(3), I hereby attest that all counsel listed above have concurred in this filing.

Dated: September 25, 2026

*/s/ Dena C. Sharp*
Dena C. Sharp

**ORDER**

PURSUANT TO STIPULATION, IT IS SO ORDERED.

Dated: September 29, 2026

Hon. Rita F. Lin
United States District Judge

## Exhibit A

| Field | Definition | Doc Type |
|---|---|---|
| SOURCE/ORGANIZATION | Name of party producing the document | All |
| CUSTODIAN | Name of person or other data source (non-human) from where documents/files are produced. | All |
| ALLCUSTODIANS | Name(s) of All Custodians associated with the record including where documents have been removed as a duplicate. | All |
| BEGDOC | Bates number of the first page of the document. | All |
| ENDDOC | Bates number of the last page of the document. | All |
| BEGATTACH | First Bates number of family range (i.e. Bates number of the first page of the parent e-mail) | E-mail |
| ENDATTACH | Last Bates number of family range (i.e. Bates number of the last page of the last attachment) | E-mail |
| FILESIZE | File Size | All |
| FILE TYPE | The file type of a document (e.g., MS Excel Spreadsheet). | All |
| FILE NAME | The file name of a document | E-Document |
| FILE EXTENSION | File extension of a document, e.g. PDF, MSG, DOCX | All |
| NATIVEFILELINK | For documents provided in native format only | All |
| TEXTPATH | File path for OCR or Extracted Text files | All |
| FROM | Sender | E-mail |
| TO | Recipient | E-mail |
| CC | Additional Recipients | E-mail |
| BCC | Blind Additional Recipients | E-mail |
| SUBJECT | Subject line of e-mail | E-mail |
| ATTACHCOUNT | Number of attachments to an e-mail | E-mail |
| DATE/TIME_SENT (mm/dd/yyyy hh:mm:ss AM) | Date Sent | E-mail |
| DATE/TIME_RCVD (mm/dd/yyyy hh:mm:ss AM) | Date Received | E-mail |
| E-mail Outlook Type | Type of Outlook item, e.g., e-mail, calendar item, contact, note, task | Outlook or similar system data |

| Field | Definition | Doc Type |
|---|---|---|
| MD5HASHVALUE | MD5 hash value | All |
| TITLE | The extracted document title of a document. | E-document |
| AUTHOR | Author field from metadata of a native file. | E-document |
| DATE/TIME_CREATED (mm/dd/yyyy hh:mm:ss AM) | Creation Date & Time | E-document |
| LAST MODIFIED BY | Last person who modified (saved) a document | E-document |
| DATE/TIME_LASTMODD(mm/dd/yyyy hh:mm:ss AM) | Last Modified Date & Time | E-document |
| DocumentType | Descriptor for the type of document: "E-document" for electronic documents not attached to e-mails; "E-mail" for all e-mails; "E-attachment" for files that were attachments to e-mails; and "Physical" for hard copy physical documents that have been scanned and converted to an electronic image. | All |
| Importance | High Importance - indicates Priority E-mail message. | E-mail |
| Page Count | Page count or image count | All |
| ProdVol | Name of production volume that on. | All |
| ProdDate | Date production volume produced by producing party | All |
| Confidentiality | Confidentiality level if assigned pursuant to any applicable Protective Order or stipulation. | All |
| Redacted | "Yes" should be populated if document contains redaction. (Yes/No format) | |